# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **THOMAS NORRIS**                         )<br>                                           )<br>     **Plaintiff,**                       )<br>                                           )<br>**v.**                                    )<br>                                           )<br>**CAROLYN W. COLVIN,**                    )<br>**Acting Commissioner, Social Security**  )<br>**Administration,**                       )<br>                                           )<br>     **Defendant.**                       ) | Civil Action Number<br>**2:14-cv-1164-AKK** |

## MEMORANDUM OPINION

Plaintiff Thomas Norris ("Norris") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Norris filed his application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on August 4, 2010, alleging an amended

disability onset date of November 1, 2009 due to gout, swelling in feet, hernia operation, severe asthma, and high blood pressure. (R. 44, 240, 244). After the SSA denied his application, Norris requested a hearing before an ALJ. (R. 77, 93-94). The ALJ subsequently denied Norris's claim, (R. 17-20), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-4). Norris then filed this action pursuant to § 205(g) of the Act, 42 U.S.C. § 205(g), on April 4, 2014. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Norris had not engaged in substantial gainful activity since November 1, 2009, and therefore met Step One. (R. 19). Next, the ALJ found that Norris satisfied Step Two because he suffered from the severe impairments of "bilateral tinea pedis, gout, asthma, anxiety, posttraumatic stress disorder (PTSD), and organic mental disorders . . . ." *Id*. The ALJ then proceeded to the next step and found that Norris did not satisfy Step Three since he "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Norris has the residual functional capacity (RFC) to:

> [P]erform light work . . .[,] except [Norris] experiences moderate pain with its moderate [e]ffect on his ability to concentrate, which occurs on an

occasional basis during an 8-hour workday. As long as [Norris] has regularly scheduled breaks normally allowed in the workplace by an employer, [Norris] will never be off task during an 8-hour workday. [Norris] must have a work environment that is free of dust, fumes, or gases and has a temperature and humidity controlled atmosphere. [Norris] is unable to work around unprotected heights or dangerous or moving equipment. [Norris] can never climb ladders, ropes, or scaffolds; can occasionally kneel, crouch, and crawl; and can frequently balance, stoop, reach, handle, finger, and feel.

(R. 21). In light of Norris's RFC, the ALJ determined that Norris "is unable to perform any past relevant work" as a "warehouse worker and melter." (R. 27). Lastly, in Step Five, the ALJ considered Norris's age, education, work experience, and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Norris] can perform." *Id.* Therefore, the ALJ found that Norris "has not been under a disability, as defined in the Social Security Act, from November 1, 2009." (R. 28).

## V. Analysis

Norris raises multiple contentions of error which the court will outline and address below. None of contentions, however, establish that the ALJ committed reversible error. Therefore, the court will affirm the ALJ's decision.

*1. Alleged failure to properly consider all of Norris's impairments and their combined effects*

In two related contentions, Norris maintains that the ALJ erred by not including his depression, pain, and swelling in both feet as "severe" impairments at Step Two, and by not considering these impairments at Step Three in combination

with Norris's other impairments of tinea pedis, gout, asthma, anxiety, PTSD, and organic mental disorders (all of which the ALJ considered "severe"). Doc. 12 at 27-31. Unfortunately for Norris, the contention that the ALJ should have counted Norris's depression, pain, and feet swelling as distinct impairments at Step Two is unavailing because Step Two acts as "filter," and merely requires a finding of "at least one severe impairment." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Significantly, where, as here, the ALJ finds at least one severe impairment at Step Two and proceeds in Step Three to offer "specific and well-articulated findings" as to the effect of "all of the claimant's impairments, whether severe or not, in combination," the ALJ properly applies Steps Two and Three. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The ALJ in this case clearly considered all of Norris's impairments (whether severe or not) and determined that Norris's physical impairments and mental impairments, "considered singly and in combination, do not meet or medically equal" the listing criteria. (R. 20-21). *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (ALJ's finding that claimant did not have "an impairment *or combination of impairments* listed in, or medically equal to one [in the listings]" is sufficient to show that he considered the impairments in combination) (emphasis in original). Moreover, in making his RFC determination, the ALJ thoroughly discussed Norris's testimony and medical

records specifically as they relate to depression, feet swelling, foot pain, neck pain, thoracic pain, lower back pain, wrist and elbow pain, and headaches. (R. 22-27). In light of these "specific and well-articulated findings" by the ALJ, the court finds no error in the ALJ's evaluation of Norris's depression, pain, and feet swelling. *See Heatly*, 382 F. App'x at 825 (ALJ properly considered claimant's chronic back pain where the ALJ did not include back pain at Step Two but instead, at Step Three, "discussed in detail [the claimant's] testimony and medical history, which included [the claimant's] pain complaints, his limitations due to pain, and the diagnoses he received related to his pain").

### 2. *Alleged improper discounting of Dr. Muhammad Tariq's opinion*

Norris next contends that the ALJ erred in failing to give "adequate weight to the opinion of [Norris's] treating physician," Dr. Tariq. Doc. 12 at 42. While Norris is correct that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary," *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), the record here does not support Norris's assertion that Dr. Tariq is a "treating physician."[2] It is well-

---

[2] While ALJs "will evaluate every medical opinion [they] receive," 20 C.F.R. § 404.1527(d), they will not necessarily afford all medical sources equal weight. Rather, the SSA classifies acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources. A "nonexamining source" is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. § 404.1502. A "nontreating source" (but examining source) has examined the claimant but does not have an "ongoing treatment relationship" with the claimant. *Id.* A treating source, to whom the ALJ will generally afford great deference, has examined the claimant and has an "ongoing treatment relationship" with him consistent with accepted medical practice. *Id.*

established that "to qualify as a treating source, the physician must have an ongoing treatment relationship with the claimant." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 864 (11th Cir. 2012) (citing 20 C.F.R. § 404.1502). Significantly, a physician "who has treated or evaluated [a claimant] only a few times . . . [can only be a] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." 20 C.F.R. § 404.1502. In this case, the record includes evidence of only two visits over a period of one month where Dr. Tariq treated Norris for blisters on his hands and feet: on November 11, 2011 (when Dr. Tariq ordered blood tests) and on December 12, 2011 (a follow up visit to discuss the test results). (R. 618-625). Norris has made no showing that these two visits—the second of which was merely a follow up to the first to discuss test results—are sufficiently frequent to amount to an "ongoing treatment relationship." Based on this record evidence, the court concludes that these visits are alone insufficient to establish that Dr. Tariq is a treating physician.[3] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873 (6th Cir. 2007) (physician who examined claimant only once was not treating source to be accorded highest level

---

[3] Norris maintains that he visited "Quality of Life" (the medical office at which Dr. Tariq sees patients) twelve times for treatment. Doc. 12 at 42. However, the record reveals that on most of those visits Norris received treatment from nurse practitioners—not Dr. Tariq. (R. 581, 585, 589, 593, 597, 598, 601, 604, 608, 612, 617). To the extent that Norris relies on the nurse practitioners' opinions to establish that he is disabled, the court notes that nurse practitioners are not "acceptable medical sources." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764 (11th Cir. 2014). *See also* 20 C.F.R. § 404.1502 (defining treating source as the claimant's own "physician, psychologist, or other acceptable medical source"); 20 C.F.R. § 404.1513 (defining "acceptable medical sources" as licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists).

of deference); *Daniels v. Apfel*, 242 F.3d 388 (10th Cir. 2000) (physician who diagnosed claimant and prescribed medication is not a treating source where the record contains "no evidence that [the physician] provided ongoing care for the [claimant]"); *Yarbrough v. Astrue*, No. 5:12-CV-00754-RDP, 2013 WL 4434013, at *5 (N.D. Ala. Aug. 15, 2013) (physician was not a treating source in part because he treated the claimant "on only four occasions"). Because Dr. Tariq is not a treating source, the ALJ was not required to afford substantial weight to Dr. Tariq's opinion. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 842 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."). Accordingly, the court rejects Norris's contention on this issue.

   *3. Alleged failure to base the RFC determination on substantial evidence*

   Norris contends next that the ALJ erred in his RFC determination. However, the court cannot discern what record evidence Norris is relying on to support his contention or which aspect of the RFC determination he is challenging. *See* doc. 12 at 43-46. Although Norris points out that there is no "Residual Functional Capacity Form" in the record, the significance of this assertion is unclear since Norris does not offer any legal authority or elaborate on its relevance. *Id*. at 44. Similarly, without any further support, Norris asserts that the ALJ erred "in finding that [Norris] has minor physical limitations" and "can perform sustained work

activities." *Id*. Finally, Norris points to case law which stands for the proposition that an ALJ should rely on formal assessments by treating or examining physicians "addressing [a claimant's] ability to perform work activities such as lifting, standing, walking, bending, carry or squatting" to support an RFC determination, *Thomason v. Barnhart*, 344 F. Supp. 2d 1326, 1329 (N.D. Ala. 2004), but again does not explain how those cases support his position.  Because "issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived," *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citing *Cont'l Tech Serv., Inc. v. Rockwell Int'l Corp*, 927 F.2d 1198, 1199 (11th Cir. 1991)); *see also Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (finding that the claimant waived his argument because he "did not elaborate on [the] claim or provide citation to authority"), the court rejects Norris's arguments.

 Norris's arguments fail also because a careful review of the record shows that the ALJ's RFC determination is based on substantial evidence. Specifically, the record includes a consultative examination by Dr. Sathyan Iyer establishing that Norris "does not have any restrictions of functions involving sitting, standing, walking, handling, hearing, and speaking," but that he "may have some impairment of functions involving extremes of temperature and dusty atmosphere." (R. 404). Dr. Iyer also found that Norris "has full range of motion of all the major joints

without any restirctions," his "[m]uscle power of the upper and lower extremities is normal," his gait is normal, and he can "walk on his heels, tiptoes, and squat." (R. 403). Furthermore, Norris explained in the function report form that he filled out with his application that he could lift up to 20 pounds. (R. 257). All of this record evidence is consistent with the ALJ's conclusion that Norris can perform "light work." 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").[4]

### 4. *Alleged improper discounting of Norris's subjective testimony*

Next, as far as the court can discern, Norris claims that the ALJ's reasons for discrediting Norris's testimony regarding his head trauma and severe foot pain are not based on objective medical evidence. Doc. 12 at 49. First, with respect to Norris's head trauma, although Norris points to no medical evidence to substantiate his position, the court has carefully reviewed the record and finds the ALJ's reasoning consistent with the medical evidence. Specifically, while Norris complained that he would commonly "black out" from head trauma after an

---

[4] To the extent Norris is arguing that the ALJ erred in his RFC determination and there is therefore "no basis for the hypothetical question presented to the [vocational expert]," doc. 12 at 44, the court rejects this argument because Norris raises it in a perfunctory matter, *see N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006), and because the court concludes that the ALJ's RFC determination was proper.

incident where he was hit in the face with a hammer, (R.50), the results of a computer tomography scan of Norris's head after the hammer incident were normal, which supports the ALJ's finding that Norris's "assertions might not be entirely accurate," (R. 26). Second, the court is confounded by Norris's assertion that the ALJ discounted Norris's testimony that he experiences severe pain in his feet given that the ALJ actually found that Norris has "some legitimate limitations from his gout and from his bilateral [tinea] pedis," and counted gout and bilateral tinea pedis as severe impairments at Step Two. (R. 25). Ultimately, based on the court's review of the record, it is readily apparent that the ALJ thoroughly recounted Norris's medical records and pointed to various examples where Norris's subjective testimony contradicted his medical records. (R. 22-27). Therefore, the court concludes that the ALJ did not err in evaluating Norris's subjective complaints. *See Wilson v. Barnhart,* 284 F.3d 1219, 1226 (11th Cir. 2002) (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

    *5. Alleged improper inference from lack of medical treatment*

Contrary to Norris's contention that the ALJ "drew adverse inferences from lack of medical treatment . . . without considering [Norris's] explanation," doc. 12 at 53-54, the ALJ actually noted that Norris's records include "numerous" visits to

the doctor, (R. 26). The only assertion in the ALJ's opinion which could be construed as a comment on Norris's lack of medical treatment is the ALJ's observation that "the claimant is not the most reliable when it comes to follow up visits" with his medical providers. (R. 26). The ALJ made this observation in the context of counteracting the opinion of Dr. David Wilson (an examining psychologist), who noted that Norris lacked "adequate access to necessary medical or psychiatric care." (R. 26, 632). As the ALJ pointed out, Dr. Wilson's opinion is "unfounded" based on "the numerous doctor's visits" in the record. (R. 26). Rather than an improper adverse inference, the court reads the ALJ's comment as an attempt to explain the ALJ's position that Norris—although he might not always be "reliable when it comes to follow up visits"— had adequate access to healthcare. As a result, the ALJ then decided to afford no weight to the opinion of Dr. Wilson (on this issue and in general). *Id*. Because the ALJ made the comment regarding Norris's follow up visits specifically to discredit Dr. Wilson rather than to support an "inference about . . . symptoms and . . . functional effects from a failure to seek or pursue regular treatment," Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P (S.S.A. July 2, 1996), the court rejects Norris's contention on this issue.[5]

---

[5] To the extent Norris is claiming that he cannot afford the necessary medical care, the court rejects

### *6. Alleged improper denial by the Appeal's Council of Norris's request for review*

Finally, Norris maintains that the Appeals Council "ignored" new evidence he submitted and improperly denied his request for review. *See* doc. 12 at 31-40; 46-47. The new evidence includes medical records from July 24, 2012 and a letter from Norris's counsel to the Appeals Council dated March 11, 2013 (both of which the Appeals Council accepted and included in the record) and medical records from September 2012 through August 2013 (which the Appeals Council "looked at" but excluded from the record[6]). (R. 2, 4-5, 924-931). With respect to the July

---

Norris's argument because he fails to substantiate his position. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d at 1422; *Outlaw*, 197 F. App'x at 828 n.3. The court also notes that Norris's access to medical care has no bearing on this case because—while it is true that "poverty excuses noncompliance" with prescribed medical treatment, *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)—Norris's compliance with prescribed medical treatment is simply not at issue here. Indeed, Norris has been prescribed numerous medications which he takes daily, (R. 50), and the ALJ made no comment or finding on this issue, *see* (R. 21-28).

[6] Norris subsequently moved to supplement the record with the medical records that the Appeals Council excluded, and to remand this case "pursuant to sentence [four] to require the Appeals Council to conduct a meaningful review" of the evidence. Docs. 17, 18. The Appeals Council excluded the evidence in question after finding that "this new information is about a later time" than the ALJ's July 19, 2012 decision, which means "it does not affect the decision about whether [Norris was] disabled beginning on or before July 19, 2014." (R. 2). According to Norris, the evidence "related to the relevant time period," and describes physical and psychological symptoms "that could bear on his condition during the relevant period." Doc. 17 at 3; doc. 18 at 3, 5.

As a threshold matter, Norris's contention that this court should remand the case under sentence four is unavailing because any judgment of remand under sentence four must be "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). Because "[a] reviewing court is limited [to the record certified by the Commissioner] in examining the evidence," *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985), when, as here, the Appeals Council did not consider the evidence, this court must treat the evidence "as if it had been first presented to the district court and . . . evaluate[s] the case under sentence six," *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1268 (11th Cir. 2007) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (internal quotation marks omitted). To obtain a remand under sentence six, Norris must establish that (1) there is new, noncumulative evidence; (2) the evidence is material; and (3) there is good cause for failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). The new evidence is "material" if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Id.*

The court rejects Norris's arguments related to the new evidence and **DENIES** both the motion to supplement and the motion to remand. Aside from stating that the excluded evidence is "not necessarily chronologically irrelevant" and "could bear on his condition during the relevant time period," doc. 17 at 3; doc. 18 at 2-3, Norris has made no showing that the evidence in question is *actually* relevant or material to justify inclusion in the record or remand, *see Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our

24, 2012 medical records, the Appeals Council "found that this information does not provide a basis for changing the [ALJ's] decision." (R. 2). According to Norris, the Appeals Council did not properly evaluate the new evidence and merely "perfunctorily adhered" to the ALJ's decision, which Norris contends requires this court to remand the case. *See* doc. 12 at 31-40.

While Norris is generally correct that remand is justified where the Appeals Council fails to evaluate new and material evidence and instead merely "perfunctorily adheres" to the ALJ's decision," *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir.1980)), the court concludes that the Appeals Council's statement that the "new information does not provide a basis for changing the [ALJ's] decision" is sufficient to show that the Appeals Council adequately evaluated the new evidence. After all, as this court has previously explained, "nothing requires the

---

considering the issue on appeal."). Rather than making any such showing, Norris maintains that "[a]fter the [evidence is] included in the [r]ecord, the parties will be allowed to argue whether the [evidence is] chronologically relevant." Doc. 17 at 5. Unfortunately, Norris overlooks that new evidence must be chronologically relevant to be included in the record in first place, and to justify a remand under sentence six. *See Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1261 (11th Cir. 2007) ("The Appeals Council must consider new, material, and chronologically relevant evidence . . . . [Evidence] is chronologically relevant if 'it relates to the period on or before the date of the [ALJ] hearing decision.") (citing 20 C.F.R. § 404.970(b)).

Ultimately, based on a careful review of the evidence, the court finds that it would not "change the administrative outcome"—i.e., that it does not "[consist] of medical evidence that relates directly to one of [Norris's] principal alleged impairments, about which there was inadequate evidence presented to the ALJ." *Caulder*, 791 F.2d at 878. Rather, the evidence in large part details that Norris, after the ALJ's decision, continued to suffer from gout, tinea pedis, and anxiety (which the ALJ already properly considered as a severe impairments at Step Two). Docs. 17-1, 17-2. 17-3, 17-4, 17-5, 17-6. Furthermore, the evidence outlines a new diagnosis for major depression that Norris received in March 2013 (after the ALJ's decision), which has no bearing on Norris's impairments as of the date of the decision. *See* docs. 17-7, 17-8. The court also notes that Dr. Tariq's assessment of Norris in May 2013—which Norris included as new evidence and which by Norris's own contentions should be afforded great weight—was "negative for . . . depression." Doc. 17-5 at 3.

[Appeals Council] to further explain its denial of review." *Hearn v. Colvin*, No. 4:12-CV-3892-AKK, 2014 WL 4809421, at *11 (N.D. Ala. Sept. 26, 2014) (quoting *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 832 (11th Cir. 2013) (finding identical language sufficient)) (internal quotation marks omitted). Norris's reliance on *Epps* and various Eleventh Circuit cases citing *Epps* overlooks that the Eleventh Circuit has recently clarified that "[n]othing in . . . *Epps* . . . requires the Appeals Council to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014). Furthermore, Norris has made no showing that the new evidence has a "reasonable probability" of changing the ALJ's decision as required to justify remand. *See Flowers*, 441 F. App'x 735 at 745 (quoting *Hyde v. Bowen,* 823 F.2d 456, 459 (11th Cir. 1987) ("The new evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'").[7] Accordingly, the court finds no error in the Appeals Council's consideration of the new evidence.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Norris is not disabled is supported by substantial evidence, and that the ALJ

---

[7] The new medical evidence which the Appeals Council accepted and included in the record details a visit on July 24, 2012 to Quality of Life where a nurse practitioner treated Norris for chronic depression and tinea pedis. (R. 928-931). The nurse practitioner noted that Norris had full range of motion in his joints, that he exhibited no edema in his extremities, that his neurological health seemed normal, that his psychiatric health was mostly normal but he exhibited changeable mood and affect—although the nurse practitioner was "unsure of how honest [Norris was] being." *Id*.

applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 13th day of February, 2015.

                                              **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE